1  DANIEL N. BALLARD, ESQ. (CA SB #219223) (*pro hac vice*)
   MICHELLE L. SAMONEK, ESQ. (CA SB #216001) (*pro hac vice*)
2  McDONOUGH HOLLAND & ALLEN PC
   Attorneys at Law
3  555 Capitol Mall, 9th Floor
   Sacramento, CA  95814
4  Phone: 916.444.3900
   Fax:    916.444.3249
5
   BARRY L. BRESLOW, ESQ. (NSB #3023)
6  ROBISON, BELAUSTEGUI, SHARP & LOW
   71 Washington Street
7  Reno, NV  89503
   Phone: 775.329.3151
8  Fax:    775.329.7941

9  Attorneys for Defendants and Counterclaimants
   Dorothy Tovar and Adrenaline Sports, Inc.

10

11                UNITED STATES DISTRICT COURT

12                   DISTRICT OF NEVADA

13

14  R & R PARTNERS, a Nevada Corporation, and )   Case No. CV-N-04-0145-LRH(PAL)
    the LAS VEGAS CONVENTION AND            )
15  VISITORS AUTHORITY,                      )   **DEFENDANTS' OBJECTIONS TO THE**
                                             )   **DECLARATIONS OF:**
16                        Plaintiffs,        )
                                             )   **MARK DICKENS,**
17         v.                                )   **YOSHIKO INOUE,**
                                             )   **TERRY JICINSKY,**
18  DOROTHY TOVAR, an individual, and        )   **ROSSI RALENKOTTER,**
    ADRENALINE SPORTS, INC.,                 )   **JAMES RATHNER,**
19                                           )   **MIKE SLOAN, AND**
                          Defendants.        )   **WILLIAM VASSILIADIS**
20  _____  )
                                             )
21  AND RELATED COUNTERCLAIMS.              )
                                             )
22  _____  )

23         Defendants DOROTHY TOVAR and ADRENALINE SPORTS, INC. (collectively,

24  "Tovar") hereby respectfully object to the Declarations filed by Plaintiffs R&R PARTNERS

25  ("R&R") and the LAS VEGAS CONVENTION AND VISITORS AUTHORITY ("LVCVA").

26  **I.    <u>DECLARATION OF MARK DICKENS</u>**

27         Dickens is Dorothy Tovar's ex-fiancé.  Their relationship collapsed to such a degree that she

28  was required to obtain a Temporary Restraining Order against him for self-protection.  A true and

909852v1 32136/0009

1  correct copy of this TRO is attached to the Second Declaration of Dorothy Tovar filed herewith and

2  is suitable for judicial notice, Fed. R. Evid. 201(b), as to its existence.  *Transmission Agency of*

3  *Northern California v. Sierra Pacific Power Co.,* 287 F.3d 771 (9th Cir. 2002).  Evidence of this sort

4  is fully admissible to show motive and intent to act in a particular manner.  Fed. R. Evid. 402(b).

5  The unhappy relationship between Mark Dickens and Dorothy Tovar raises clear questions as to the

6  credibility of his declaration.

7        Paragraph 5 of the Dickens Declaration relates alleged statements by Jeremy Pluto to

8  Dickens.  These alleged statements are unavoidably in violation of the hearsay rule as they are out of

9  court statements of an absent non-party offered for their truth.  Fed. R. Evid. 801(c); Fed. R. Civ. P.

10  56(c) (affidavits shall be made on personal knowledge and on facts admissible in evidence).  The

11  statements find no comfort in the exclusions and exceptions from the hearsay rule. so the statements

12  are wholly inadmissible and cannot be considered.

13  **II.  DECLARATION OF YOSHIKO INOUE**

14        Yoshiko Inoue is an attorney for LVCVA.  Her declaration seeks to authenticate various

15  documents for purposes of judicial notice.

16        Exhibit A is a Deed of Trust between Tovar and McDonough Holland & Allen PC.  This

17  document is wholly irrelevant to this litigation, Fed. R. Evid. 401, except insofar as it reflects the

18  intensity of Tovar's belief in the rightness of her cause.

19        Exhibit B is a certificate of cancellation of the Nevada registration of the WHAT HAPPENS

20  HERE STAYS HERE mark for clothing.  This document has never been produced during discovery

21  in this action, despite specific requests seeking all information and documents relating to that mark.

22  See Tovar's 1st Req. for Prod. of Docs to R&R, #10, attached hereto as **Exhibit A**.  Having failed to

23  produce this document or information concerning it in discovery, R&R and LVCVA should be

24  barred from relying on this document on this motion.

25        Exhibit O is said to be a printout of pages at www.rrpartners.com.  This document is

26  objectionable on multiple grounds.  First, the printout is the website as of March 12, 2006, a date of

27  no relevance at all to the litigants or the litigation.  Second, this document contains alleged facts

28  / / /

MHA
Donough Holland & Allen PC
Attorneys at Law

909852v1 32136/0009

without support or source, constituting hearsay and multiple layers of hearsay. The author of this document is not revealed, and there is plainly no swearing even attempting to support this document.

Finally, Exhibit P is said to be a printout of a Lexis People Search purporting to show that Jerome Pluto has some form of interest in or residence at 5541 Ralston Way in Placerville at various times. The source of this data is entirely unclear, and the information itself establishes it has errors because it refers to Dorothy L. Pluto, not Dorothy Tovar. There is no basis on which to conclude that this document has any accuracy, and it is unquestionably hearsay.

## III.    DECLARATION OF TERRY JICINSKY

Terry Jicinsky is employed at LVCVA and was deposed in this litigation. His declaration differs from his deposition in significant respects and, on that basis, is inadmissible on a motion for summary judgment.    Attached hereto as **Exhibit B** is an extract from Jicinsky's deposition, reflecting the content of his testimony. Specifically Mr. Jicinsky was asked:

Q.    All right. Does the Las Vegas -- does the LVCVA attach "What Happens Here Stays Here" to clothing?

A.    Not on a regular basis. I have -- we have used it once on internal T-shirts.

Q.    Were those internal T-shirts publicly available?  Could the public purchase one of these T-shirts?

A.    No, they could not.

"The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991). Jicinsky attempts to further alter his deposition by stating that LVCVA has "passed out clothing for promotional purposes" at no cost to the recipient. Not only does this differ from his deposition, but it is meaningless due to the lack of detail. What kind of clothing?  How many articles of clothing, passed out to how many people?  What period of time—one occasion out of a number of years or many occasions?  The total lack of detail and inconsistency with previous deposition testimony deprives this declaration of any substantive meaning.

/ / /

/ / /



909852v1 32136/0009

## IV.    DECLARATION OF ROSSI RALENKOTTER

Rossi Ralenkotter's Declaration contains inadmissible hearsay in paragraphs 4 ("R&R advised me"), 6 ("Mr. Vassiliadis agreed"), 7 ("R&R identified" "R&R assessed"), and 8 ("Mr. Vassiliadis told me"). All of these hearsay statements are incompetent and may not be considered. Fed. R. Evid. 801(c); Fed. R. Civ. P. 56(c).

Ralenkotter makes a number of statements in his declaration that are contrary to interrogatory answers given in this litigation as well as his earlier declaration. When asked to state the basis for its assertion that it owned the WHHSH slogan, R&R previously responded that "R&R first started using the mark on or before December 27, 2002 and the mark became instantly famous." Second Ballard Dec. at Exh. 1, Response No. 7. R&R does not mention any oral assignment between the Plaintiffs. Second, Ralenkotter's declaration disclosing his participation in the process culminating in the written assignment does not mention any alleged oral assignment. First Ralenkotter Dec. In fact, Ralenkotter testified during deposition that he did not know the meaning of the word "assign." Second Ballard Dec. at Exh. 14 at 37:16 – 41:7. Ralenkotter's testimony is consistent only with his grant to R&R of the right to sue to enforce the mark. *Id.* Third, the written assignment agreement eventually entered into lacks any mention of the alleged oral assignment. First Ballard Dec. at Exh. 31. The amendment to that Agreement, moreover, created to "more accurately reflect the intention of the Parties," also does not mention the alleged oral assignment. Puschnig Decl. at Exh. A. There is, literally, no evidence of any such oral agreement. Ralenkotter's Declaration is incompetent and must be disregarded in all those respects.

## V.    DECLARATION OF JAMES RATHNER

The Rathner declaration describes an e-mail in significant detail yet provides no copy of it as an exhibit. Rule 1002 of the Federal Rules of Evidence requires that the original writing be produced when a litigant seeks to prove the contents of a writing. *United States v. Bennett*, 363 F.3d 947, 953-954 (9th Cir. 2004). A duplicate can be admitted in proper circumstances under Rule 1003, but no duplicate is offered. None of the grounds for proceeding without the original or a duplicate is satisfied in this instance. See Fed. R. Evid. 1004-1007. Accordingly, all mention of the e-mail and its contents should be stricken.

MHA
Donough Holland & Allen PC
Attorneys at Law

909852v1 32136/0009

1    Paragraph 4 of the Rathner Declaration is also objectionable in that it contains inadmissible

2    opinion testimony of a lay witness contrary to Rule 701 of the Federal Rules of Evidence. Opinions

3    offered by James Rathner are incompetent and irrelevant.

4    **VI.    DECLARATION OF MIKE H. SLOAN**

5    Paragraph 3 of the Declaration of Mike H. Sloan is objectionable because its implications are

6    not supported by its facts. Sloan states that he "began seeing T-shirts with <u>a slogan sufficiently</u>

7    <u>similar</u> to WHAT HAPPENS HERE STAYS HERE that [he] understood the T-shirts to be in some

8    way associated with LVCVA ...." There is no indication that the T-shirts in question were related in

9    any way to Tovar. Sloan does not identify the slogan appearing on the T-shirts he saw, nor the

10   source of the T-shirts. These shirts could have been knock-offs of Tovar's shirts or shirts that were

11   similar but differed in any of a variety of ways. As Plaintiffs themselves note, there are many

12   slogans in the "What Happens *** Stays ***" format. Sloan does not even state that the T-shirt he

13   saw even used Tovars WHAT HAPPENS in VEGAS STAYS IN VEGAS mark. As a result, this

14   declaration lacks any relevance and must be disregarded. Fed. R. Evid. 401.

15   **VII.    DECLARATION OF WILLIAM VASSILIADIS**

16   William Vassiliadis is employed at R&R. He responded to interrogatories for R&R in this

17   litigation. His interrogatory answers differ from his declaration in significant respects and, on that

18   basis, is inadmissible on a motion for summary judgment. Attached hereto as **Exhibit C** are the

19   interrogatory answers, reflecting the variations in content. "The general rule in the Ninth Circuit is

20   that a party cannot create an issue of fact by an affidavit contradicting his prior deposition

21   testimony." *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991).

22   Paragraph 4 of his declaration uses the phrase "R&R began seeing." As an artificial entity,

23   R&R could not see in the manner reflected. If some of its employees began seeing, then the

24   paragraph is reciting hearsay containing statements by the employees. Vassiliadis then states that

25   "R&R notified LCVCA," another phrase that denies the reader knowledge of the identity of the

26   actor. None of paragraph 4 survives scrutiny.

27   ///

28   ///



MHA
Donough Holland & Allen PC
Attorneys at Law

909852v1 32136/0009

Paragraph 5 describes discussions with Rossi Ralenkotter in such vague terms that one cannot determine where the hearsay begins and ends. Paragraph 6 is even more objectionable because it recites blatant hearsay intermingled with vague discussions.

Paragraph 7 describes an oral agreement for transfer of the trademark in violation of federal and Nevada law, as described above. For these reasons, the Vassiliadis declaration is inadmissible.

## VIII.    CONCLUSION

These declarations are last minute attempts to manufacture "actual" evidence of confusion in the marketplace and a lawful basis for the oral assignment of WHHSH from LVCVA to R&R. The Court should neither countenance nor credit these declarations.

DATED:        March 21, 2006

McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law


By: /s/ Daniel N. Ballard
DANIEL N. BALLARD

Attorneys for Dorothy Tovar and Adrenaline Sports, Inc



909852v1 32136/0009

02/17/2005 11:44 FAX  775 329 7941        R B S & L LAW        @ 009/022

1  Barry L. Breslow, Esq. (NSB #3023)
   ROBISON, BELAUSTEGUI, SHARP & LOW
2  71 Washington Street
   Reno, NV 89503
3  Phone: 775-329-3151
   Fax: 775-329-7941
4
   McDONOUGH HOLLAND & ALLEN PC
5  Attorneys at Law
   DANIEL N. BALLARD, ESQ. (CSB #219223)
6  MICHELLE L. SAMONEK, ESQ. (CSB #216001)
   555 Capitol Mall, 9th Floor
7  Sacramento, CA  95814
   Phone: 916-444-3900
8  Fax:    916-444-3249

9  Attorneys for Defendant and
   Counterclaimant Dorothy Tovar
10

11                 IN THE UNITED STATES DISTRICT COURT

12                        DISTRICT OF NEVADA

13

14  R & R PARTNERS, a Nevada Corporation,      )
                                               )   Case No. CV-N-04-0145-LRH-VPC
15                        Plaintiff,           )
                                               )   **DOROTHY TOVAR'S REQUEST FOR**
16         v.                                  )   **PRODUCTION OF DOCUMENTS, SET**
                                               )   **ONE**
17  DOROTHY TOVAR, an individual,              )
                                               )
18                        Defendant.           )
                                               )
19  _____    )
                                               )
20  AND RELATED COUNTERCLAIMS                  )

21         Defendant and Counterclaim plaintiff Dorothy Tovar ("Tovar"), pursuant to Fed. R. Civ. P.

22  34, requests that Plaintiff and Counterclaim defendant R&R Partners ("R&R") produce the

23  following documents and tangible things for inspection and copying at the offices of McDonough

24  Holland & Allen PC at 555 Capitol Mall in Sacramento, California no later than thirty days after

25  service of this First Set of Requests for Production of Documents and Tangible Things ("Requests").

26                              **DEFINITIONS**

27         1.    **YOU** and **YOUR** means and refers to R&R, and its officers, directors, employees,

28  parent corporations, divisions, subsidiaries, predecessors, successors-in-interest, agents,



799244v2 32136/0009

-1-

EXHIBIT A   1/28

1  representatives, attorneys, investigators, and consultants.

2      2.      **PERSON** and **PERSONS**, and the possessive form of those terms, mean and include

3  natural persons, corporations, associations, organizations, partnerships, joint ventures, and any other

4  kind of business or other entity.

5      3.      **RELATING TO**, **RELATED TO**, **RELATE TO**, and **RELATES TO** mean

6  containing, alluding to, responding to, connected with, regarding, discussing, involving, showing,

7  describing, analyzing, reflecting, identifying, incorporating, referring to, or in any way pertaining to.

8      4.      **INCLUDING** means including, in conjunction with, in cooperation with, together

9  with, and accompanied by, all without limitation.

10     5.      **DOCUMENT** and **DOCUMENTS** mean and refer to all documents of any type and

11  description as identified in and within the scope of Fed. R. Civ. P. 34(a) and the 1970 Advisory

12  Committee Note thereto, and all forms of writings and recordings as defined in Fed. R. Evid.

13  10001(1).  The term includes, but is not limited to, printed, typewritten, handwritten, computer-

14  created or machine-generated documents or reproductions thereof, of whatever character, including

15  without limitation; letters, memoranda, contracts, agreements, addenda, disclosures, offers, counter-

16  offers, printed or unprinted electronic mail, telephone records or logs, telegrams, facsimile

17  transmissions, handwritten notations, diaries, calendar notations, appointment books, meeting

18  minutes or descriptions thereof, time sheets, bank account records, billing sheets, expense accounts,

19  expense account reports, drawings, graphs, charts, photographs, photograph records, data processing

20  reports and forms, data compilations from which information can be obtained or translated,

21  advertisements, and any non-identical copies of any of the foregoing, or combinations of any of the

22  foregoing whether original, draft, or copy.  This definition applies to all **DOCUMENTS** on the

23  particular subject in **YOUR** possession, custody, or control, or that of **YOUR** attorneys, agents,

24  employees, officers, directors, or representatives, irrespective of who generated, prepared, or signed

25  the **DOCUMENTS**.

26     6.      **COMMUNICATION** or **COMMUNICATIONS** mean any transmission of

27  information from one person to another, including, but not limited to; letter, memorandum,

28  telegraph, facsimile transmission, electronic mail, inter-office and intra-office communications,

1  verbal contact in face-to-face meetings, telephone conversation, or otherwise.

2       7.    **SPECIMEN** means any tangible thing and includes, but is not limited to, electronic

3  and tape media.

4       8.    The singular shall be deemed to include the plural and vise versa; the disjunctive

5  ("or") shall be deemed to include the conjunctive ("and"); and the conjunctive ("and") shall be

6  deemed to include the disjunctive ("or").

7  **INSTRUCTIONS**

8       9.    **YOU** are required to produce all **DOCUMENTS** and tangible things in **YOUR**

9  possession, custody, or control that are requested herein. Copies of **DOCUMENTS** containing

10 notations, interlineations, or other legible information added to an original or copy of a

11 **DOCUMENT** is considered separate and distinct from any other copy of the identical

12 **DOCUMENT** and shall be produced.

13     10.    **YOU** are required by this Request for Production and Fed. R. Civ. P 34(b) to either

14 produce the **DOCUMENTS** as kept in the usual course of business or have the **DOCUMENTS**

15 organized and labeled to correspond to each Request set forth below. When produced in the usual

16 course of business or as labeled to correspond to each Request set forth below, the **DOCUMENTS**

17 and tangible things shall be produced with the folders, or copies thereof, kept by the **PERSON** who

18 had the **DOCUMENTS** in his, her, or its possession, custody, or control so that Tovar will know

19 who had the **DOCUMENT** or thing in his, her, or its possession, custody, or control.

20     11.    If any responsive **DOCUMENT** no longer exists, cannot be located, is not in **YOUR**

21 possession, or cannot be produced in full, **YOU** are required to identify it, describe its subject matter,

22 describe its disposition, identify all **PERSONS** with knowledge of its disposition, and produce the

23 **DOCUMENT** to the extent possible.

24     12.    As to any **DOCUMENTS** for which **YOU** assert a privilege, immunity, or other

25 protection, **YOU** are required to fully comply with Fed. R. Civ. P. 26(b)(5) including, but not limited

26 to, identifying the **DOCUMENTS** with particularity by stating their date of creation, intended

27 recipients, subject matter, number of pages, and the full name and job title of each **PERSON** who

28 has seen either the original or a copy of the **DOCUMENTS**, or has knowledge of their subject

**MHA**
(Coopermith Haglund & Ailman Ltd.
Attorneys at Law)

-3-

799244v2 32136/0009

1    matter or contents, and explain the grounds and precise nature of each privilege, immunity or other

2    protection claimed.

3         13.    These Requests shall be deemed continuing in accordance with Fed. R. Civ. P. 34(b).

4         **REQUEST FOR PRODUCTION**

5         1.    All **DOCUMENTS** required by Fed. R. Civ. P. 26(a)(1)(B), (C) and (D).

6         2.    All **DOCUMENTS YOU** identified or referred to in **YOUR** responses to Tovar's

7    First Set of Interrogatories that are not produced in response to the following Requests.

8         3.    All **DOCUMENTS** that **RELATE TO YOUR** assertion that consumers associate

9    the term "What Happens Here Stays Here" with **YOU.**

10         4.    All **DOCUMENTS** that **RELATE TO YOUR** assertion that consumers associate

11    the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS with **YOU.**

12         5.    All **DOCUMENTS RELATING TO** any good or service **YOU** have sold, offered

13    for sale, or licensed, or intend to sell, offer for sale, or license, under or in connection with the term

14    "What Happens Here Stays Here."

15         6.    All **DOCUMENTS RELATING TO** any good or service **YOU** have sold, offered

16    for sale, or licensed, or intend to sell, offer for sale, or license, under or in connection with the term

17    WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

18         7.    All **DOCUMENTS RELATING TO** any good or service that any of **YOUR**

19    licensees have sold or offered for sale, or intend to sell or offer for sale, under or in connection with,

20    the term "What Happens Here Stays Here."

21         8.    All **DOCUMENTS RELATING TO** any good or service that any of **YOUR**

22    licensees have sold or offered for sale, or intend to sell or offer for sale, under or in connection with,

23    the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

24         9.    All **DOCUMENTS** comprising or **RELATING TO YOUR** U.S. Trademark

25    Applications, Serial Nos. 76/619,984 and 76/582,191, for the term "What Happens Here Stays

26    Here," including, but not limited to, **COMMUNICATIONS** and the file history or file wrapper.

27         10.    All **DOCUMENTS** comprising or **RELATING TO** any state trademark applications

28    for the term "What Happens Here Stays Here" including, but not limited to, **COMMUNICATIONS**

**MHA**

799244v2 32136/0009

1   and the file history or file wrapper.

2       11.    All **COMMUNICATIONS** between **YOU** and any third party **RELATING TO**

3   **YOUR**, or any other person's, right to use, own, or preclude others from using or owning, the term

4   "What Happens Here Stays Here."

5       12.    All **COMMUNICATIONS** between **YOU** and any third party **RELATING TO**

6   **YOUR**, or any other person's, right to use, own, or preclude others from using or owning, the term

7   WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

8       13.    All **DOCUMENTS** comprising or **RELATING TO** any licenses, assignments, or

9   other agreements between **YOU** and any third party that **RELATES TO** the term "What Happens

10   Here Stays Here."

11       14.    All **DOCUMENTS** comprising or **RELATING TO** any licenses, assignments, or

12   other agreements between **YOU** and any third party that **RELATES TO** the term WHAT

13   HAPPENS IN VEGAS STAYS IN VEGAS.

14       15.    All **COMMUNICATIONS** between **YOU** and any third party **RELATING TO** any

15   and all trademark or service mark applications **YOU** contemplated filing, filed, or intend to file for

16   the term "What Happens Here Stays Here."

17       16.    A **SPECIMEN** of each good that is being used or intended to be used by **YOU** or

18   **YOUR** licensees on which the term "What Happens Here Stays Here" appears.

19       17.    A **SPECIMEN** of each good that is being used or intended to be used by **YOU** or

20   **YOUR** licensees on which the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS appears.

21       18.    A **SPECIMEN** of each label, packaging, tag, or other source identifier that is being

22   used or intended to be used by **YOU** or **YOUR** licensees on which the term "What Happens Here

23   Stays Here" appears.

24       19.    A **SPECIMEN** of each label, packaging, tag, or other source identifier that is being

25   used or intended to be used by **YOU** or **YOUR** licensees on which the term WHAT HAPPENS IN

26   VEGAS STAYS IN VEGAS appears.

27       20.    A **SPECIMEN** of each advertisement in which **YOU** or **YOUR** licensees have used

28   or intend to use the term "What Happens Here Stays Here."



799244v2 32136/0009

21. A **SPECIMEN** of each advertisement in which **YOU** or **YOUR** licensees have used or intend to use the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

22. A **SPECIMEN** of each webcast and television and radio broadcast in which **YOU** or any of **YOUR** licensees have used or intend to use the term "What Happens Here Stays Here."

23. A **SPECIMEN** of each webcast and television and radio broadcast in which **YOU** or any of **YOUR** licensees have used or intend to use the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

24. All **DOCUMENTS RELATING TO** the date the term "What Happens Here Stays Here" was first used by **YOU** or on **YOUR** behalf, either alone, or in combination with other terms or designs, in any manner, in connection with any good or service, including use in commerce and use anywhere in the United States.

25. All **DOCUMENTS RELATING TO YOUR** proposed, intended, or actual use of the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS, whether internal or available to public or customers, including, without limitation, business plans, financial estimates, advertising designs and mock ups, marketing memoranda and materials, or advertising materials in the form of any online and/or Internet marketing or advertising, web sites, electronic kiosks, electronic commerce devices, trade shows, sales pitches, customer brochures, direct mail, contests, job fairs, events at any University or school, catalogs, labels, and packaging.

26. All **DOCUMENTS** comprising or **RELATING TO** any opinion requested by or received by **YOU** regarding **YOUR** use or adoption of the term "What Happens Here Stays Here," **YOUR** right to use or register any marks or designations consisting of or including the term "What Happens Here Stays Here" or whether **YOUR** use or adoption of the term "What Happens Here Stays Here" would infringe or not infringe upon the rights of any other entity or Person.

27. All **DOCUMENTS RELATING TO** any instances of actual or perceived confusion, mistake, or deception as to the source of **YOUR** goods or services branded under or in connection with the term "What Happens Here Stays Here."

28. All **DOCUMENTS RELATING TO** any efforts by **YOU** to protect, enforce, monitor, or otherwise maintain **YOUR** alleged rights to exclusively use or own the term "What

**MHA**
Mississippi Highland & Allen PA
Attorneys at Law

799244v2 32136/0009

1    Happens Here Stays Here" as a trade name, trademark, service mark, or any other legal right.

2    29.    All **DOCUMENTS RELATING TO YOUR** alleged rights to exclusively use or

3    own the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS as a trade name, trademark,

4    service mark, or any other legal right.

5    30.    Financial **DOCUMENTS**, including but not limited to, invoices, billing documents,

6    or accounting documents, **RELATING TO** the annual sales or revenues in units and dollars for

7    goods or services provided by **YOU** and **YOUR** licensees under or in connection with the term

8    "What Happens Here Stays Here" from the earliest date of **YOUR** or **YOUR** licensees alleged first

9    use of the term "What Happens Here Stays Here" in any manner to present.

10    31.    All **DOCUMENTS RELATING TO YOUR** and **YOUR** licensees' annual

11    advertising, marketing, or promotional costs including, but not limited to, **DOCUMENTS**

12    **RELATING TO** budgeting and receipts for goods or services sold or proposed to be sold under or

13    in connection with the term "What Happens Here Stays Here" from the earliest date of **YOUR** or

14    **YOUR** licensees alleged first use of the term "What Happens Here Stays Here" in any manner to

15    present.

16    32.    All **DOCUMENTS RELATING TO YOUR** and **YOUR** licensees' customers or the

17    nature of the classes or types of purchasers to whom **YOU** and **YOUR** licensees market, including

18    but not limited to, business, institutional, and individual customers, or purchasers of any good or

19    service sold under or in connection with the term "What Happens Here Stays Here" from the earliest

20    date of **YOUR** or **YOUR** licensees alleged first use of the term "What Happens Here Stays Here" in

21    any manner to present.

22    33.    All **DOCUMENTS RELATING TO** any statements or opinions of any expert

23    obtained by YOU or any person acting for or on YOUR behalf regarding any issue in this case,

24    including, but not limited to, any evidence of actual or likely confusion caused by Tovar's use of the

25    term WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

26    34.    All **DOCUMENTS RELATING TO YOUR** assertion in **YOUR** Second

27    Affirmative Defense that "Tovar's claims are barred because she does not have priority in the WHAT

28    HAPPENS IN VEGAS STAYS IN VEGAS mark."



799244v2 32136/0009

35.    All **DOCUMENTS RELATING TO YOUR** assertion in **YOUR** Fourth Affirmative Defense that Tovar "fraudulently attempted to procure a trademark registration(s) for the WHAT HAPPENS IN VEGAS STAYS IN VEGAS and WHAT HAPPENS ON SPRING BREAK trademark."

36.    All **DOCUMENTS RELATING TO YOUR** assertion in Paragraph 15 of **YOUR** Complaint that "Tovar's unauthorized, intentional and willful use of R&R's Mark creates a likelihood of confusion, mistake and deception as to the affiliation, connection, association, origin, sponsorship or approval of the goods and services of R&R with those of Tovar."

37.    All **DOCUMENTS RELATING TO YOUR** assertion in Paragraph 16 of **YOUR** Complaint that "actual confusion of consumers has occurred or will likely occur and will continue to occur as a result of the acts of Tovar."

38.    All **DOCUMENTS RELATING TO YOUR** assertion in Paragraph 33 of **YOUR** Complaint that the term "What Happens Here Stays Here" "is a distinctive and famous mark."

39.    All **DOCUMENTS RELATING TO YOUR** assertion in Paragraph 36 of **YOUR** Complaint that "Tovar acted to defraud and oppress R&R through its intentional and willful use of R&R's Mark, and by inducing others to infringe on R&R's Mark."

40.    All **DOCUMENTS RELATING TO YOUR** assertion in Paragraph 41 of **YOUR** Complaint that "Tovar has blurred the unique association which has heretofore existed between R&R Mark and the goods or services offered by that mark and/or tarnished the reputation of R&R through the use of its Mark."

41.    All **DOCUMENTS RELATING TO YOUR** document retention policy.

DATED: January 28, 2005

McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law

By:

Attorneys for Defendant and Counterclaimant
Dorothy Tovar



799244v2 32136/0009

## CERTIFICATE OF SERVICE

Pursuant to FRCP 5, I certify that I am an employee of Robison, Belaustegui, Sharp & Low, and on this date I hand-delivered a true copy of the attached **DOROTHY TOVAR'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET ONE** addressed to:

    Kristin Jahn, Esq.
    Jahn & Associates
    565 California Avenue
    Reno, Nevada 89509

Dated this 28th day of January, 2005.

799244v2 32136/0009

1

IN THE UNITED STATES DISTRICT COURT

2

DISTRICT OF NEVADA

3

4   R & R PARTNERS, INC., a          )
    Nevada corporation,              )

5                                    )
            Plaintiff,               )

6                                    )
            vs.                      )   Case No. CV-N-04-0145

7                                    )
    DOROTHY TOVAR, an individual,    )

8                                    )
            Defendant.               )

9   _____)

10

11

12                          CERTIFIED COPY

13

14

                DEPOSITION OF TERRY JICINSKY

15

                       Taken at

16                Las Vegas Hilton
                  3000 Paradise Road

17                Las Vegas, Nevada

18            On Wednesday, April 13, 2005
                   At 10:10 A.M.

19

20

21

22

23

24

25  Reported by:  Mary E. Howard, CCR No. 762, RPR


LEGALINK®
A **WORDWAVE** COMPANY

LegaLink San Francisco
601 Van Ness Ave, Suite 2052
San Francisco, CA 94102

tel (415) 359-2040
tel (800) 869-9132
fax (415) 359-2050

www.legalink.com

EXHIBIT B

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

Terry Jicinsky  April 13, 2005

1    brand?

2        A.    Yes.   I've had personal conversations with

3    clients and visitors who have used the statement "What

4    Happens in Vegas Stays in Vegas" in context of the

5    destination advertising campaign and the LVCVA's

6    development and implementation of that, and that the terms

7    are interchangeable.

8        Q.    What does the LVCVA use the term "What

9    Happens" -- "What Happens Here Stays Here" for?

10       A.    In printed advertising and television

11   advertising in connection with the Las Vegas logo which

12   contains the word Las Vegas.

13       Q.    And the purpose of using that -- is it fair to

14   say that the purpose of using "What Happens Here Stays

15   Here" is to promote tourism and convention visitors to the

16   City of Las Vegas?

17       A.    Yes.

18       Q.    All right.

19             Does the Las Vegas -- does the LVCVA attach

20   "What Happens Here Stays Here" to clothing?

21       A.    Not on a regular basis.  I have -- we have used

22   it once on internal T-shirts.

23       Q.    Were those internal T-shirts publicly available?

24   Could the public purchase one of these T-shirts?

25       A.    No, they could not.

REPORTER'S CERTIFICATE

STATE OF NEVADA    )
                   )   SS
COUNTY OF CLARK    )

I, Mary E. Howard, a duly commissioned Notary Public, Clark County, State of Nevada, do hereby certify: That I reported the taking of the deposition of TERRY JICINSKY, commencing on Wednesday, April 13, 2005, at the hour of 10:10 a.m.

That prior to being examined, the witness was by me duly sworn to testify to the truth, the whole truth, and nothing but the truth. That I thereafter transcribed my said shorthand notes into typewriting and that the typewritten transcript is a complete, true, and accurate transcription of my said shorthand notes.

I further certify that I am not a relative or employee of counsel of any of the parties, nor a relative or employee of the parties involved in the action.

IN WITNESS WHEREOF, I have set my hand in my office in the County of Clark, State of Nevada, this 22ⁿᵈ day of _April_____, _2005_ .


_Mary E. Howard_____
Mary E. Howard, CCR No. 762, RPR

1 | Jahn & Associates, LLC
KIRSTIN M. JAHN
2 | Nevada State Bar No. 6000
565 California Ave.
3 | Reno, NV 89509
(775) 329-2282
4
5 | Jones Vargas
JOHN P. DESMOND
State Bar No. 5618
6 | 100 W. Liberty Street, 12th Floor
P.O. Box 281
7 | Reno, NV 89504
Tel: (775) 786-5000
8 | Fax: (775) 786-1177
9 | Attorneys for Plaintiff
R & R Partners, Inc.
10

11 | IN THE UNITED STATES DISTRICT COURT

12 | DISTRICT OF NEVADA

| 13 | R & R PARTNERS, INC., a Nevada corporation | Case No. CV-N-04-0145-LRH-VPC |
|---|---|---|
| 14 | Plaintiff | **RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES TO PLAINTIFF** |
| 15 | v. | |
| 16 | DOROTHY TOVAR, an individual Defendant. | |

17

18 | Plaintiff, R & R Partners, Inc. ("R & R") hereby responds to Tovar's First Set of

19 | Interrogatories to Plaintiff as follows:

20 | **GENERAL OBJECTIONS**

21 | R & R makes the following General Objections which are hereby incorporated into each and

22 | every Interrogatory response:

23 | 1. R & R objects to each Interrogatory to the extent it seeks or calls for information protected

24 | by the attorney-client privilege and or protected by the work-product doctrine, or subject to any

25 | other applicable privilege.

26

27 | 2. R & R objects to each Interrogatory to the extent it seeks information that is neither

28 | relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**EXHIBIT C**

3. R & R objects to each Interrogatory to the extent it purports to call for information not in their possession.

4. R & R objects to each Interrogatory to the extent it seeks information that would violate any individual's right to privacy.

5. R & R objects to the definition of "you" and "your" as being overbroad, unduly burdensome, vague and ambiguous.

6. R & R objects to each Interrogatory to the extent it seeks to impose requirements and/or obligations inconsistent with and in addition to, the Federal Rules of Civil Procedure, the Federal Rules of Evidence and/or Local Rules of this Courts, and that are unduly burdensome and oppressive.

7. Discovery is continuing in this action. R & R reserve the right to supplement and amend its responses to these Interrogatories based on, but not limited to, information subsequently discovered, inadvertently omitted, or mistakenly stated in these response.

8. R & R incorporate these General Objections into each and every response set forth below.

9. R & R objects to the interrogatories to the extent that they are premature. The following responses reflect R & R's present knowledge, information and belief, and may be subject to change or modification based on R & R's further discovery or on facts or circumstances that may become within R & R's knowledge.

10. R & R objects to "identifying" documents as being unduly burdensome. In lieu thereof, R & R will make available for inspection and copying relevant, responsive, and non-privileged documents or business records under Fed. R. Civ. P. 33(d) from which the answer to any particular interrogatory may be derived or ascertained.

11. R & R objects to the interrogatories because they exceed the number allowed under Federal Rule of Civil Procedure § 33(a).

## RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1.** State the basis for, and describe in detail all facts in support of, YOUR assertion in Paragraph 15 of YOUR Complaint that Tovar's use of the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS "creates a likelihood of confusion, mistake and deception as to the affiliation, connection, association, origin, sponsorship or approval of the goods and services of R&R with those of Tovar" and identify those documents and persons on which YOU will rely to support the allegation.

**RESPONSE TO NO 1:** Plaintiff objects to this Interrogatory on the basis that it calls for a legal conclusion. Plaintiff further objects to the extent it calls for information protected by the attorney client privilege and/or work product doctrine and is a compound interrogatory requesting a response to three separate Interrogatories. Subject to these objections and without waiving any of them R & R responds as follows:

1) The use of the phrase WHAT HAPPENS IN VEGAS STAYS IN VEGAS creates a likelihood of confusion, mistake and deception as to the affiliation, connection, association, origin, sponsorship or approval of the goods and services of R&R with those of Tovar because R & R's famous mark is entitled to wide protection. Numerous newspaper, magazine articles were written about the success of the campaign and fame of the Mark. In addition, the Mark has been referred to on many television shows. R & R has the right to sell souvenir items, including clothing associated with it Mark.

2) Several entities have approached R & R to license the Mark WHAT HAPPENS IN VEGAS STAYS IN VEGAS because they believe that the WHAT HAPPENS HERE STAYS HERE MARK is the same as the WHAT HAPPENS IN VEGAS STAYS IN VEGAS MARK and owned by R & R. Entities which have requested a license from R & R include, Expedia, The Fairfield Inn, Freedom Yacht, Fernbank, Western Media Corporation, Seattle Mariners, Colorado

**Page 3 of 14**

1    Rockies, and Bell and Young.

2         3) R & R will provide documents responsive to this Request.

3         **INTERROGATORY NO. 2.**  State the basis for, and describe in detail all facts in support

4    of, YOUR assertion in Paragraph 19 of YOUR Complaint that Tovar engaged in the "willful

5    infringement" of YOUR alleged mark and identify those documents and persons on which YOU

6

7    will rely to support the allegation.

8         **RESPONSE TO NO. 2:** Plaintiff objects to this Interrogatory on the basis that it calls for a

9    legal conclusion. Plaintiff further objects to the extent it calls for information protected by the

10   attorney client privilege and/or work product doctrine and is a compound interrogatory requesting a

11

12   response to three separate Interrogatories.   Subject to these objections and without waiving any of

13   them R & R responds as follows:

14        4) Tovar began using the phrase WHAT HAPPENS IN VEGAS STAYS IN VEGAS well

15   after R & R's mark became distinctive and famous.  Tovar provided no evidence that a search was

16

17   done prior to her use or federal application for  WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

18        5) Dorothy Tovar is likely to be the person to reply upon to support this allegation.

19        **INTERROGATORY NO. 3**.  State the basis for, and describe in detail all facts in support

20   of, YOUR assertion in Paragraph 33 of YOUR Complaint that the term "What Happens Here Stays

21   Here" "is a distinctive and famous mark," identify those documents and persons on which YOU will

22   rely to support the allegation, and state the date the term allegedly became famous.

23        **RESPONSE TO NO. 3:** Plaintiff objects to this Interrogatory on the basis that it calls for a

24   legal conclusion. Plaintiff further objects to the extent it calls for information protected by the

25   attorney client privilege and/or work product doctrine and is a compound interrogatory requesting a

26

27   response to three separate Interrogatories.   Subject to these objections and without waiving any of

28   them R & R responds as follows:

6) R & R 's mark is distinctive and famous because it engaged in a nationwide campaign to advertise the City of Las Vegas using the Mark and the Mark was immediately repeated by others including, but not limited to: Billy Crystal at the Oscars in 2004, the Tonight Show several times, Fraiser, the Today Show, Paula Zahn Now, CSI, Bold and Beautiful, Anything for Love, Scarborough Country, Buchanan & Press, Late Show with Craig Kilborn, Less than Perfect and Ed. Additionally, R&R and/or its licensee, LVCVA were approached by a number of entities that wanted a license to use the Mark which are listed in Interrogatory No. 1 above.

7) R & R will produce documents responsive to this request.

**INTERROGATORY NO. 4.** State the basis for, and describe in detail all facts in support of, YOUR assertion in Paragraph 41 of YOUR Complaint that "Tovar has blurred the unique association which has heretofore existed between R&R Mark and the goods or services offered by that mark and/or tarnished the reputation of R&R through the use of its Mark" and identify those documents and persons on which YOU will rely to support the allegation.

**RESPONSE TO NO. 4:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous. Plaintiff further objects to this Interrogatory on the basis that it calls for a legal conclusion. Plaintiff further objects to the extent it calls for information protected by the attorney client privilege and/or work product doctrine and is a compound interrogatory requesting a response to four separate Interrogatories. Subject to these objections and without waiving any of them R & R responds as follows:

8) Tovar sells clothing on an Internet site called Pure Pleasure. At least this use by Tovar tarnishes the goodwill associated with the Mark and the reputation of R & R.

9) Tovar's use of a colorable imitation of the Mark was not authorized by R & R and has and will continue to blur the distinctiveness of R & R's famous Mark.

10) R & R will reply upon Tovar's Response to Plaintiff's First Set of Production of

1    Documents to support its claim along with documents which R & R will produce.

2    **INTERROGATORY NO. 5.**  State the basis for, and describe in detail all facts in support

3    of, YOUR assertion in Paragraph 36 of YOUR Complaint that "Tovar acted to defraud and oppress

4    R&R through its intentional and willful use of R&R's Mark, and by inducing others to infringe on

5    R&R's Mark" and identify those documents and persons on which YOU WILL RELY to support

6

7    the allegation.

8    **RESPONSE:** Plaintiff objects to this Interrogatory on the basis that it is overly broad,

9    unduly burdensome, vague and ambiguous.  Plaintiff further objects to this Interrogatory on the

10   basis that it calls for a legal conclusion. Plaintiff further objects to the extent it calls for information

11   protected by the attorney client privilege and/or work product doctrine and is a compound

12   interrogatory requesting a response to three separate Interrogatories.   Subject to these objections

13

14   and without waiving any of them R & R responds as follows:

15   11) Tovar's use of WHAT HAPPENS IN VEGAS STAYS IN VEGAS was intentional and

16   willful because her use was subsequent to R & R's use and she did not conduct a search or receive

17   an opinion on her use prior to adopting it for use on clothing or other items.  Upon information and

18   belief, Tovar licenses the rights to use the WHAT HAPPENS IN VEGAS STAYS IN VEGAS

19   slogan at least for use on t-shirts and souvenirs to third parties.

20

21   12) R & R will rely upon Tovar's Response to Plaintiff's First Set of Discovery Requests to

22   support this claim.

23   **INTERROGATORY NO. 6.**  State the basis for, and describe in detail all facts in support

24   of, YOUR Affirmative Defenses and identify those documents and persons on which you will rely

25   to support each such defense.

26

27   **RESPONSE TO NO. 6:** Plaintiff further objects to this Interrogatory on the basis that it

28   calls for a legal conclusion. Plaintiff further objects to the extent it calls for information protected by

the attorney client privilege and/or work product doctrine and is a compound interrogatory requesting a response to four separate Affirmative Defenses equaling a response to four separate Interrogatories.    Subject to these objections and without waiving any of them R & R responds as follows:

13) The First Affirmative Defense states that the Counterclaim fails to state facts sufficient to constitute a claim upon which relief can be granted.  Defendant has no cause of action against R & R, but rather seeks a declaratory judgement of rights.  Yet, no imminent threat of action against Tovar was alleged giving rise to a declaratory judgement action.

14) The Second Affirmative Defense is self explanatory.  Tovar's first use of the WHAT HAPPENS IN VEGAS STAYS IN VEGAS phrase occurred after R & R's first use of the WHAT HAPPENS HERE STAYS HERE Mark.

15) The Counterclaim lacks subject matter jurisdiction because there was no threat to Plaintiff of being sued giving rise to a declaratory judgment action.

16) Tovar had actual or constructive knowledge of R & R or LVCVA's use of the Mark prior to filing her federal application.  Further, Tovar's use of the Mark is ornamental.

**INTERROGATORY NO. 7**.  State the basis for, and describe in detail all facts in support of, YOUR assertion that YOU own trademark or other rights to the term "WhatHappens Here Stays Here."

**RESPONSE TO NO. 7:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous.    Plaintiff objects to this Interrogatory on the basis that it calls for a legal conclusion. Plaintiff further objects to the extent it calls for information protected by the attorney client privilege and/or work product doctrine and is compound.  Subject to these objections and without waiving any of them R & R responds as follows:

17) R & R first started using the Mark on or before December 27, 2002 and the Mark

became instantly famous.

**INTERROGATORY NO. 8**. State the basis for, and describe in detail all facts in support of, YOUR assertion that YOU own trademark or other rights to the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

**RESPONSE TO NO. 8:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous. Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous.   Plaintiff further objects to this Interrogatory on the basis that it calls for a legal conclusion. Plaintiff further objects to the extent it calls for information protected by the attorney client privilege and/or work product doctrine and is compound.   Subject to these objections and without waiving any of them R & R responds as follows:

18) The use of the Mark WHAT HAPPENS HERE STAYS HERE in conjunction with promoting Las Vegas as a destination implies that the "HERE" is LAS VEGAS.   In each advertisement or promotion either the words "ONLY VEGAS" or "VEGAS" appears.

**INTERROGATORY NO. 9**.  Describe in detail each and every type of good or service on which, or in connection with which, YOU or any entity authorized or licensed by YOU has ever used or intends to use the term "What Happens Here Stays Here."

**RESPONSE TO NO. 9:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous.   Plaintiff further objects to the extent it calls for information protected by the attorney client privilege and/or work product doctrine and is compound.   Subject to these objections and without waiving any of them R & R responds as follows:

19) R & R has licensed the Mark to LVCVA to promote Las Vegas.

**INTERROGATORY NO. 10** Describe in detail each and every type of good or service on

1    which, or in connection with which, YOU or any entity authorized or licensed by YOU has ever

2    used or intends to use the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

3         **RESPONSE TO NO. 10:** Plaintiff objects to this Interrogatory on the basis that it is overly

4    broad, unduly burdensome, vague and ambiguous.   Subject to these objections and without waiving

5    any of them R & R responds as follows:

6

7         20) Clothing, souvenir items, promotion and advertising, event planning and entertainment.

8         **INTERROGATORY NO. 11.**  Describe in detail each and every type of good or service on

9    which, or in connection with which, YOU or any entity authorized or licensed by YOU has ever

10   used or intends to use the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

11

12        **RESPONSE TO NO. 11:** Plaintiff objects to this Interrogatory on the basis that it is overly

13   broad and unduly burdensome.

14        21) R & R has not licensed the Mark WHAT HAPPENS IN VEGAS STAYS IN VEGAS to

15   anyone.  R & R has considered adopting the colorable imitation WHAT HAPPENS IN VEGAS

16   STAYS IN VEGAS in conjunction with similar goods and services.

17

18        **INTERROGATORY NO. 12.**   Identify and describe in detail the ordinary purchaser or

19   expected ordinary purchaser of the goods and services sold or to be sold under YOUR "What

20   Happens Here Stays Here" designation including, without limitation the level of care exercised by

21   such an ordinary purchaser in purchasing the goods and services sold under the "What Happens

22   Here Stays Here" designation.

23        **RESPONSE TO NO. 12:** Plaintiff objects to this Interrogatory on the basis that it is overly

24   broad, unduly burdensome, vague and ambiguous.   Subject to these objections and without waiving

25   any of them R & R responds as follows:

26

27        22) The ordinary purchaser is very expansive and the marketing is not targeted to anyone in

28   particular.  The consumer for these services ranges from and includes tourists to business people,

C:\Files Aug\R & R\LVCVA\Discovery\Responses\Response to Defendant's First Set of Irrogs to Plaintiff.doc

the employed and unemployed alike, the rich to the poor and both urban and rural.

**INTERROGATORY NO.13.** Identify with specificity the channels of trade and mode of distribution through which YOUR "What Happens Here Stays Here" designation is used or intended to be used including, but not limited to, the geographic area and the approximate percentage of total sales of goods or services through each such channel of trade and mode of distribution.

**RESPONSE TO NO. 13:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous. Plaintiff further objects to the extent it is a compound interrogatory requesting a response to three separate Interrogatories. Subject to these objections and without waiving any of them R & R responds as follows:

23) The Mark is used on television, clips available on the web-site and print advertisements.

24) The advertisements using the mark are international in scope.

25) The total number of sales is measured by visitor dollar contribution which was $32.8 billion in 2003 and $33.7 billion in 2004.

**INTERROGATORY NO. 14.** List every advertisement in which YOUR or YOUR licensees have used or intend to use the term "What Happens Here Stays Here" and identify (i) in which media (television, print, internet) each advertisement appeared or will appear, (ii) the dates on which each advertisement appeared or will appear, and (iii) the total dollar amount expended for such advertising.

**RESPONSE TO NO. 14:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory Nos 26, 27 and 28. Plaintiff further objects to the extent it is a compound interrogatory requesting a response to three separate Interrogatories. Subject to these objections and without waiving any of them R & R responds as follows:

26) and 27) R & R will produce documents in response to i) and ii) above.

28) Documents will be produced from which this information can be derived.

**INTERROGATORY NO. 15:** List all third parties that have licensed from YOU, or inquired into licensing from YOU, any rights to the term "What Happens Here Stays Here."

**RESPONSE TO NO. 15:** Plaintiff objects to this Interrogatory because it exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory No. 29.

29) LVCVA, Plaintiff also incorporates by reference its response to Interrogatory No. 1.

**INTERROGATORY NO. 16.** List all third parties that have licensed from YOU, or inquired into licensing from YOU, any rights to the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

**RESPONSE TO NO. 16:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory No. 30. Subject to these objections and without waiving any of them R & R responds as follows:

30) R & R incorporates by reference its response to Interrogatory No. 1.

**INTERROGATORY NO. 17.** Describe in detail each and every type of good or service on which, or in connection with which, YOU or any entity authorized or licensed by YOU has ever used any variation of the term "What Happens Here Stays Here" in which either of the instances of the word "Here" is replaced with some other word ("Variation").

**RESPONSE TO NO. 17:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory No. 31

**INTERROGATORY NO. 18.** Identify with specificity any consumers or potential consumers who have expressed to YOU or to any of YOUR licensees any question, concern, or

C:\Files Aug\R & R\LVCVA\Discovery\Responses\Response to Defendant's First Set of Irogs to Plaintiff.doc

comment regarding confusion or similarity between the terms "What Happens Here Stays Here" and WHAT HAPPENS IN VEGAS STAYS IN VEGAS.

**RESPONSE TO NO. 18:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory 32. Subject to these objections and without waiving any of them R & R responds as follows:

32) R & R incorporates by reference its response to Interrogatory No. 1.

**INTERROGATORY NO. 19.** Describe in detail any COMMUNICATIONS between YOU and the Las Vegas Convention and Visitors Association regarding the latter's use or potential use of the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS and identify the documents that RELATE TO those COMMUNICATIONS.

**RESPONSE TO NO. 19:** Plaintiff objects to this Interrogatory on the basis that it calls for information protected by the attorney client privilege or work product doctrine and this exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory No. 33 and 34.

**INTERROGATORY NO. 20.** Describe in detail any COMMUNICATIONS between YOU and the Las Vegas Convention and Visitors Association regarding this lawsuit and identify the documents that RELATE TO those COMMUNICATIONS.

**RESPONSE TO NO. 20:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory No. 35. Plaintiff objects to this Interrogatory on the basis that it calls for information protected by the attorney client privilege or work product doctrine.

**INTERROGATORY NO. 21.** Describe in detail all damages YOU have suffered or may or will suffer due to Tovar's use of the term WHAT HAPPENS IN VEGAS STAYS IN VEGAS and identify the documents that RELATE TO those damages.

**RESPONSE TO NO. 21:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory Nos. 36 and 37.  Subject to these objections and without waiving any of them R & R responds as follows:

36) Plaintiff having just received Defendant's financials is in the process of calculating its damages and will provide a report at a date and time set forth in the Discovery Schedule.

**INTERROGATORY NO. 22.**  Do YOU contend that YOUR alleged rights to the term "What Happens Here Stays Here" precludes Tovar from using as a trademark all terms in the WHAT HAPPENS [word(s)] STAY [word(s)] format?

**RESPONSE TO NO. 22:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory No. 38.  Subject to these objections and without waiving any of them R & R responds as follows:

38) Yes.

**INTERROGATORY NO. 23.**  State whether YOU affix the TM symbol, or some other symbol or statement providing notice of claimed trademark rights, to the term "What Happens Here Stays Here" and, if so, identify the goods or services on which the term with the symbol is affixed and state the first date the term with the symbol was affixed to those goods or services.

**RESPONSE TO NO. 23:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory No. 39, 40 and 41.  Subject to these objections and without waiving any of them R & R responds as follows:

39) R & R uses the TM symbol on advertisements

40) The goods or services upon which the mark is fixed is on merchandise items such as clothing.

41) The Mark was first used in commerce at least as early as December 27, 2002.

**INTERROGATORY NO. 24.** Identify all witnesses by name and address who YOU expect to call to testify at trial and state the subject matter of each witness' testimony.

**RESPONSE TO NO. 24:** Plaintiff objects to this Interrogatory on the basis that it is overly broad, unduly burdensome, vague and ambiguous and exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory No. 42). Subject to these objections and without waiving any of them R & R responds as follows:

42) At least the following witnesses are expected to be called: Dorothy Tovar, Rob Dondero William Vassiliadis and Adrenaline Sports and /or Pure Pleasure Representatives.

**INTERROGATORY NO. 25.** Identify each person who assisted in any manner in the preparation of the answers to those Interrogatories.

**RESPONSE TO NO. 25:** Plaintiff objects to this Interrogatory on the basis that it exceeds the number of Interrogatories allowed under the Federal Rules, this amounts to Interrogatory No.

43). Subject to these objections and without waiving any of them R & R responds as follows: Morgan Baumgartner.

Dated: March 15, 2005

JAHN & ASSOCIATES, LLC

Kirstin M. Jahn, Esq.

John P. Desmond
JONES VARGAS

Attorneys for Plaintiff
R & R Partners, Inc.

## VERIFICATION

STATE OF NEVADA )
                         )ss.
COUNTY OF WASHOE )

      William Vassiliadis, being first duly sworn, deposes and says that he is the

Chief Executive Officer of R & R Partners, Inc.; that he verifies for and on behalf

of R & R Partners, Inc. the foregoing Response to Defendant's First Set of

Interrogatories to Plaintiff; that he is duly authorized to do so; that he has read

the foregoing and knows the contents thereof; that the same is true of his own

knowledge, except as to those matters therein stated on information and belief,

and as to those matters he believes them to be true.

William Vassiliadis

SUBSCRIBED and SWORN TO before me
this _16th_ day of March, 2005
by WILLIAM VASSILIADIS.

NOTARY PUBLIC

ASHLEY C. ROBINSON
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 04-91967-2 - Expires September 29, 2008

1

**CERTIFICATE OF SERVICE**

2

3

4

5          I certify that on March 15, 2005, I mailed a copy of Plaintiff's Response to

6   Defendant's First Set of Request for Interrogatories to the following:

7   Daniel Ballard, Esq.
    McDonough Holland & Allen, PC
8   555 Capitol Mall, 9th Floor
    Sacramento, CA 95814
9

10  Barry Breslow, Esq.
    Robison, Belaustegui, et al
11  71 Washington Street
    Reno, NV 89503
12

13

14                                    Tina V. Moonie

15

16

17

18

19

20

21

22

23

24

25

26

27

28